## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| KARINA QUIÑONES, et al., | CIVIL No. 14-1331 (JAG) |
| Plaintiffs, | |
| v. | |
| UNIVERSITY OF PUERTO RICO, et al., | |
| Defendants | |

## DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**TO THE HONORABLE COURT**:

**APPEAR NOW** Defendants University of Puerto Rico ("the University" or "UPR") and the co-defendants in their official capacities, Uroyoan Walker Ramos as President of the University; Dr. Rafael Rodríguez Mercado; Dr. Edgar Colón Negrón; Dr. Pedro J. Santiago Borrero; and Dr. Luis A. Serrano Torres, through the undersigned counsel, and respectfully submit this Reply, given that this Court granted their Motion for Leave to file a Reply (docket no. 44 & 45), as follows:

## I. INTRODUCTION

1.1    On August 29, 2011, defendants filed their Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) and/or 12 ( c). (Docket No. 40). That motion argues that the complaint in the instant case is a mirage, as it lacks factual averments that would state a plausible claim under ADA's Title II and the Rehabilitation Act. Why? Because, as amply discussed in the Motion to Dismiss, the complaint lacks factual averments that would nudge them to the side of viability, while Plaintiff's conclusory statements cannot provide the basis of a mininally plausible claim. In sum, Defendants' Motion to

1

Dismiss argues that the inferences that a generous reading of the complaint allow cannot possibly include the essential elements of an action under either Title I or Title II of the ADA.

1.2     The scenario that the complaint paints is of a physician who has no history of learning disabilities or other types of disabilities, to the point that she became a medical doctor with no need of accommodations; of a physician that never requested special treatment in her application to the University's Ophthalmology Residency; and who, by simply requesting to be readmitted unconditionally to the Ophthalmlogy Residency, belies her claim that she requires the protection of the ADA. Consequently, Defendants prayed this Court to dismiss the complaint.

1.3     On October 8, 2014, Plaintiff filed her Response in Opposition to Defendants' Motion to Dismiss. (Docket No. 43). As it is further expounded in the present Reply, Plaintiff's Response fails to show that her complaint must be deemed as a minimally sufficient pleading that states a plausible claim under the ADA. Therefore, Defendants reiterate their request for dismissal.

A.     Why the Averments of The Complaint Are Lacking

1.4     In their Motion to Dismiss, Defendants adequately summarized the averments of the complaint. (See docket no. 40, at 2-4). In her Response, Plaintiff asserted that Defendants "selectively pick and choose the [complaint's] factual averments to fit their pre formulated legal theory." (Docket No. 43, at 4). However, Plaintiffs' summary of the averments of the complaint is virtually identical to that included in Defendants' Motion to Dismiss. (See Motion to Dismiss, Docket No. 40, ¶¶ 1.1-1.6 at 2-4; and compare with Plaintiff's Response, Docket No. 43, at 4-7).

1.5     Hence, contrary to what Plaintiff states in her Response, at page 4, the issue has nothing to do with "Defendants['] characterization" of the complaint. The issue here is a truly fundamental one: Whether those averments are sufficient to state an ADA claim. It is evident that the

2

averments of the complaint fail to support the legal conclusions and claims for relief included therein. In sum, even a generous reading of the complaint yields a total absence of facts capable of supporting Plaintiff's claims for relief.

1.6     Mostly, the factual averments that are not included in the complaint show the implausibility of the instant litigation. That is, what is absent in the complaint, what is not alleged, shows the complaint's failure to state a claim upon which a relief could be granted. First, Quiñones fails to substantiate with facts her claims that Defendants discriminated against her on the basis of an alleged disability or that they retaliated against her for claiming the protection of the ADA.

1.7     Second, her failure-to- accommodate averments also fails, basically because she alleges that what she requests is her reinstatement in the Residency Program, with no conditions or modifications. Likewise, what she fails to aver is cricual: She does not aver that she ever requested or is requesting to work less hours than the rest of the residents or that she ever requested or is now requesting other modifications to her training regimen and/or work schedule or responsibilities. Those and other omissions belie her legal conclusion that she is disabled and that her disability impairs major life activities which require an accommodation and/or create the perception that she has a disability. Such and other shortcomings of the complaint leave a meritless and non-plausible ADA claim.

II.     ARGUMENT

    A.     THE DISMISSAL STANDARD AS EXPOUNDED BY PLAINTIFF DEFEATS HER CLAIMS

2.1     It is not hard to see that Plaintiff's allegations, read in the light most favorable to her, fail to state a claim upon which relief can be granted. In her Response, Plaintiff discusses the standard of Rules 8(a) and 12(b)(6), correctly stating that a plaintiff must allege enough facts to state a claim to relief that is plausible on its face (Response, docket no. 43, at 2, citing Bell Atlantic Corp. v. Iqbal,

550 U.S. 544, 570 (2007)); that a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do; and that a complaint is insufficient if it merely tenders naked assertions devoid of further factual enhancement. *Id*. That is the standard, to be sure.

2.2    But Plaintiff does not discuss why her complaint is more than a mere recital of labels and conclusions or a formulaic recitation of the elements of her causes of action. She also misses the point, when she asserts that Rule 8 only requires a plausible short and plain statement of her claim, not an exposition of her legal argument; and that a complaint need not pin her claim for relief to a precise legal theory. (Response, <u>docket no. 43</u> at 3). She misses the point with those assertions, because Plaintiff's legal theory is precise enough. What she lacks is a minimum set of facts to support her legal theory.

2.3    Plaintiff conclusively avers that she was subjected to discrimination because of her disability and that Defendants' failure to accommodate her was due to disability discrimination. But she offers no facts to support those legal claims. A plaintiff must allege **facts** that would plausibly support such elements of a disability-based discrimination claim, which plaintiff in the instant litigation fails to do.

2.4    A glaring shortcoming of the complaint has to do with the alleged "reasonable accommodation" that Plaintiff has requested and continues to demand: That she be re-admitted to the Ophthalmology Residency Program of the U.P.R. School of Medicine. <u>First</u>, even reading the complaint generously, plaintiff has failed to allege that the University's failure to "accommodate" her situation was due to irrational prejudice and, indeed, rational bases for the actions are apparent from the face of the complaint, as plaintiff avers in her complaint that "As a rehabilitated alcoholic and

being in active addiction to Adderall, Soma and Ambien [Quiñones] began to have problems complying with certain requirements of the residency program." *Complaint*, ¶ 29.

2.5    Second, the complaint does not allege that her initial admission to the Program, back in July, 2011, included some sort of accommodation due to she having a "condition" or a "disability." There is no averment, for instance, claiming that she had made clear that she suffered a disability; or that she mentioned in her application to the Program that she had a condition or disability; or that she stated prior to her admission or even after her admission, that her working or training conditions at the Residency Program had to be somehow altered due to a condition or a disability. Neither does plaintiff claim that her readmission to the Program would have to entail certain accommodations, alterations or concessions that are not normally allowed to medical doctors who train as Ophthalmology residents. Plaintiff's Response does not even try explain away those shortcomings or to discuss why they should not lead ot the dismissal of her claims.

2.6    In short, the averments of the complaint do not allow a mere inference that plaintiff requested an "accommodation" due to a "disability." Everything else is superfluous. Mere conclusory allegations of discrimination unsupported by any facts are insufficient for notice pleading purposes. Once the mere conclusions and formulaic allegations are discarded, the averments that qualify as factual allegations must state a plausible claim for relief. Otherwise, dismissal is the only appropriate result. In short, courts must require plaintiffs to allege in their complaints "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). That is, plaintiffs have to nudge "their claims across the line from conceivable to plausible." *Id*. That is precisely the glaring shortcoming of the complaint: It pretends to rely only on threadbare recitals of the elements of an ADA a cause of action, supported only by mere conclusory statements.

2.7    Plaintiff makes the worst possible argument, when she states that through discovery, she would have the chance to unearth facts in support of her claims of "differentail treatment and discriminatory motive." (Response, docket no. 43, at 8). That argument is feeble, because it is well-established that discovery is not designed to make up for actions in which the complaint fails to state a claim. *See* Aponte Torres v. University of Puerto Rico, 445 F.3d 50, 59 (1st Cir. 2006) (Any matters disclosed by discovery were irrelevant to the district court's ruling on defendants' dispositive motion for failure to state a claim. Moreover, the "discovery rules are not intended as a broad license to mount serial fishing expeditions.").

2.8    Also, Plaintiff argues that the cases on which Defendants relied in their Motion to Dismiss were decided at the summary judgment stage. (Response, docket no. 43, at 8). But whatever the stage at which they were decided, Defendants discussed them because they shed light on what kind of factual averments are required to support Plaintiffs' claims.

2.9    In Roth v. Lutheran, 57 F.3d 1446 (7th Cir. 1995), plaintiff doctor Roth applied to five pediatric residency programs and two psychiatry residency programs, all located in Chicago. In his relevant application, Roth stated that although he was born with strabismus, he no longer considered this an obstacle to his medical education because he had been fitted with a contact lens which corrected his visual acuity. **Like plaintiff in the present case**, Roth neither requested nor indicated that he would need a part-time schedule or any other type of accommodation. *Id*., at 1450. That is a shortcoming of Plaintiff's complaint.

2.10    In Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791 (1st Cir. 1992), plaintiff claimed that Tufts Medical School had to accommodate him by allowing him to take tests that were not of the multiple-choice kind. The Court of Appeals for the First Circuit stated that the relevant inquiry

requires to determine whether the student ever put the medical school on notice of his handicap by making '**a sufficiently direct and specific request for special accommodations**.' *Id*. at 1386. ... That is also a shortcoming of Plaintiff's complaint in the instant case.

2.11    In <u>Burch</u> v. <u>Coca-Cola, Co.</u>, 119 F.3d 305, 314 (5th Cir. 1997), the Court sensibly and correctly asserted that under the ADA "an employer's obligation to provide a 'reasonable accommodation,' when triggered, contemplates changes to an employer's procedures, facilities, or performance requirements that will permit a qualified individual with a disability to perform the essential functions of his or her job. In all cases a reasonable accommodation will involve a change in the *status quo*, for it is the *status quo* that presents the very obstacle that the ADA's reasonable accommodation provision attempts to address."

2.12    The Court further held that "this case was improperly tried on a reasonable accommodation theory. First, Burch failed to establish that his alcoholism interfered in any way with his ability to perform the essential functions of an area service manager for Coca-Cola without reasonable accommodation or, for that matter, that his alcoholism ever substantially impaired any major life activity. Second, Burch **failed to establish that he ever requested any modification or adjustment to his job** as an area service manager with Coca-Cola. A wrongful termination claim under the ADA is not properly analyzed under a reasonable accommodation theory unless an employer is shown to have terminated a qualified individual with a disability in order to avoid accommodating that employee's impairments at the workplace. Accordingly, **an employee who requests only the opportunity to return to an unmodified, previously-held position fails to state a cognizable claim** under 42 U.S.C. §(s) 12112(b)(5)." ***Id***. (Emphasis supplied). Those and others are shortcomings also identifiable in the complaint in the captioned case.

2.13    Plaintiffs are way off the mark when they assert that Defendants is somehow barred from questioning that she had a disability at the moment she requested accommodation and that she is otherwise qualified to work in the Residency and be trained accordingly. ((Response, <u>docket no. 43</u>, at 15). Particularly because Defendants are resting on run-of-the-mill, failure to state a claim, standards and arguments. What Defendants argue is that the Complaint does not include a minimally sufficient factual ellaboration pointing to the existence of claims upon which relief could be granted. Of course, Defendants deny that they are barred from defending themselves in the instant litigation. But their Motion to Dismiss is simply questioning the sufficiency of the complaint itself, which is all that is asked of such a motion.

2.14    Finally, Plaintiff fails to confront Defendants' arguments concerning her retaliation claim, by making only a perfunctory exposition of that issue, which is in reality a waiver of any argument in her favor. (*See* Response, <u>docket no. 43</u>, at 17-18).

**B**.    **The 2008 ADA Amendments Have No Impact in the Present Case**

2.15    Plaintiff mentions the 2008 amendments to the ADA, which rejected certain holdings of the Supreme Court in <u>Sutton</u> v. <u>United Air Lines</u>, 527 U.S. 471 (1999) and in <u>Toyota</u> v. <u>Williams</u>, 534 U.S. 184 (2002). But those amendments are irrelevant to Defendants' arguments and Plaintiff does not explain why they are relevant. Moreover, Plaintiff mistakenly stated that defendants cited <u>Sutton</u> and <u>Toyota</u> in their motion to dismiss. (Response, <u>docket no. 43</u>, at 12). **Those cases are nowhere to be found in the dismissal motion and Defendants certainly did not rely on them**.

2.16    The ADA Amendments Act of 2008 ("ADAAA") explicitly overturn the Supreme Court decisions in <u>Sutton</u>, *supra*, and <u>Toyota</u>, *supra*, by rejecting the high standards imposed on claimants by the Court in those cases; and reiterates that Congress intends the scope of the ADA to

8

be broad and inclusive. However, the ADAAA retained the ADA's definition of disability as a physical or mental impairment that substantially limits one or more life activities; a record of such impairment; or being regarded as having such impairment. It clarified and expanded the definition's meaning and application in the following ways:

i) The ADAAA deleted two findings in the ADA that led the Supreme Court to restrict the meaning and application of the definition of disability. These findings were that "some 43,000,000 Americans have one or more physical or mental disabilities" and that "individuals with disabilities are a discrete and insular minority." The Court had treated these findings as limiting how other provisions of the ADA should be construed;

ii) It provided that the definition of disability "shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this Act." Significantly, it retained the terms "substantially limits" and "major life activities" from the original ADA definition of "disability," although it makes clear that Congress intended the terms to impose less- demanding standards than those enunciated by the Supreme Court in the Toyota case;

iii) It prohibits consideration of mitigating measures such as medication, assistive technology, accommodations, or modifications when determining whether an impairment substantially limits a major life activity. The related text of the ADAAA explicitly rejects the Supreme Court's holdings in Sutton and its companion cases that mitigating measures must be considered in determining whether an impairment constitutes a disability under the law. The ADAAA also provides that impairments that are episodic or in remission are to be assessed in their active state;

iv) It listed specific examples of major life activities, rather than leaving that phrase open to interpretation, as the ADA of 1990 did. The non-exhaustive list of major life activities in § 4(4)(a) of the amended ADA includes caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating and working. The ADAAA also listed major bodily functions, including, but not limited to, functions of the immune system; normal cell growth; and digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions;

v) It removed from the "regarded as" prong of the disability definition (the third prong of the definition) the requirement that an individual demonstrate that the impairment that he or she has, or is perceived to have, limits a major life activity in a way that is perceived to be substantial. Under the ADAAA, therefore, an individual can establish coverage under the law by showing that he or she has been subjected to an action prohibited under the Act because of an actual or perceived physical or mental impairment that is not transitory and minor. The law also explicitly states that although individuals who fall solely under the "regarded as" prong of the definition of disability are protected

from discrimination, entities covered by the ADA are not required to provide accommodations, or to modify policies and procedures, for such persons;

vi) The law clarifies that the authority granted to three specific Federal agencies to issue regulations interpreting the ADA includes the authority to issue regulations implementing the definitions contained in Sections 3 and 4 of that Act; and

vii) It makes conforming amendments Section 7 of the Rehabilitation Act of 1973, and to Title I of the ADA itself. To conform the employment-related provisions of the ADA with parallel provisions of Title VII of the Civil Rights Act of 1964, the latter amendments change the language of Title I to provide that no covered entity shall discriminate against a qualified individual "on the basis of disability."

2.17    Of course, none of those amendments to the ADA have an impact on the arguments

advanced by Defendants in their Motion to Dismiss.

**WHEREFORE**, Defendants reiterate their request for dismissal of the complaint, with

prejudice.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, on October 31, 2014.

**WE HEREBY CERTIFY** that on this date, we have electronically filed the foregoing Reply with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

**GONZALEZ CASTAÑER, CSP**
128 F.D. Roosevelt Ave., 2nd Floor
San Juan, Puerto Rico 00918-2409
Tel. 787-758-7819/ Fax 787-758-4152

*s/ Roberto A. Fernández Quiles*
**ROBERTO A. FERNANDEZ QUILES, Esq.**
**USDC-PR No. 206301**
rfernandez@gcpsc.com; rafernandezlaw@gmail.com

*s/ Magaly Rodríguez Quiñones*
**MAGALY RODRIGUEZ QUIÑONES**
USDC-PR No. 205010
mrqvlaw@gmail.com;mrodriguez@gcpsc.com

10